

FILED & JUDGMENT ENTERED

Christine F. Ramsey

June  25  2026

Clerk, U.S. Bankruptcy Court
Western District of North Carolina

_Ashley A. Edwards_
Ashley Austin Edwards
United States Bankruptcy Judge

## UNITED STATES BANKRUPTCY COURT
## FOR THE WESTERN DISTRICT OF NORTH CAROLINA
## CHARLOTTE DIVISION

| | |
|---|---|
| In re:<br><br>    Black Pearl Vision, LLC,<br><br>        Debtor. | Case No. 24-30948<br>Chapter 11 |
| Black Pearl Vision, LLC,<br><br>        Plaintiff,<br><br>v.<br><br>    G And G Funding Group, LLC,<br><br>        Defendant. | Adv. Proc. No. 25-03143 |

## ORDER GRANTING IN PART AND DENYING IN PART DEFENDANT'S MOTION
## TO DISMISS ADVERSARY PROCEEDING

**THIS MATTER** is before the Court upon the Defendant's Motion to Dismiss Adversary

Complaint and Memorandum of Law filed on March 6, 2026 [Doc. No. 7 (the "Motion to

Dismiss")]. Plaintiff filed a Response in Opposition to Defendant's Motion to Dismiss on May 18,

2026 [Doc No. 10 (the "Response")]. On May 26, 2026, The Court held a hearing on the Motion

to Dismiss (the "Hearing"), where Richard P. Cook appeared on behalf of the Plaintiff and Btzalel

Hirschhorn appeared on behalf of the Defendant. For the reasons outlined below, the Court grants

1

the Motion to Dismiss as to the Plaintiff's affirmative use of New York Usury law and denies the

Motion to Dismiss on all other grounds.

## I.  BACKGROUND

Black Pearl Vision, LLC (the "Debtor") filed a voluntary petition for relief under Chapter

11 of the Bankruptcy Code on October 31, 2024 (the "Petition Date"). The Debtor is a North

Carolina limited liability company that was engaged in the business of manufacturing and sale of

contact lenses. Dr. Shante Williams (the "Principal") is the Debtor's CEO and majority

shareholder. Upon the commencement of the case, the Debtor continued to operate as debtor-in-

possession (the "Debtor-in-Possession" or "Plaintiff," together with the Defendant, the "Parties").

The Plaintiff initiated this adversary proceeding (the "Adversary Proceeding") by filing the

complaint on December 18, 2025 [Doc. No. 1 ("the Complaint")]. Defendant G and G Funding

Group, LLC is a New York limited liability company with its principal place of business in New

York and is engaged in the issuance and servicing of merchant cash advances.

The Plaintiff alleges in the Complaint that on December 28, 2023, the Debtor executed a

"Future Receivables Sale and Purchase Agreement" with the Defendant that purported to sell

$314,408.85 of Debtor's future receipts in exchange for payments totaling $191,829.68 to the

Debtor (the "Agreement"). According to the Agreement, the Debtor agreed to remitt $1,920.51

each business day to the Defendant, representing twenty-five percent (25%) of the Debtor's future

2

revenue (the "Purchased Percentage"). The Agreement includes a choice of law provision that indicates it is governed by the laws of New York.[1]

The Agreement authorized the Defendant to file a UCC-1 that encumbered all assets of the Debtor, created an irrevocable power of attorney in favor of the Defendant, and required the Principal to execute a guaranty of all obligations under the Agreement.  In the event of default, the Agreement provided that (1) the Purchased Percentage would increase from twenty-five percent (25%) to one hundred percent (100%) and would be drafted from the Debtor's bank account via Automated Clearing House ("ACH") and (2) the Defendant could file a confession of judgment against the Debtor.

Beginning on January 2, 2024 until June 5, 2024, the Debtor paid Defendant $1,920.51 each business day. Beginning on June 6, 2024 until July 12, 2024, the Debtor paid the Defendant $1,250.00 each business day. Over the course of 192 days, the Debtor paid a total of $233,574.06 to the Defendant (collectively, the "Transfers"). The Plaintiff calculates the annualized interest rate on the Agreement as 41.37% for that 192 day period.

In the Complaint, the Plaintiff asserts three claims for relief against the Defendant seeking to avoid allegedly constructively fraudulent obligations and transfers under 11 U.S.C. § 548(a)(1)(B) and recover under 11 U.S.C. § 550(a)(1) (collectively, the "Avoidance Claims").[2]

The Plaintiff contends that the Agreement constitutes a loan, rather than a sale of receivables, because the Defendant did not bear any risk of loss. Based upon Plaintiffs' assertion that the Agreement is a loan, Plaintiff alleges that the Agreement violates New York usury law,

---

[1] The Parties do not dispute that New York law governs the Agreement.
[2] The Complaint also includes a fourth claim for relief asserting a violation of 18 U.S.C. §§ 1962(a) and seeking recovery pursuant to § 1964(c) ("RICO Claims"). The RICO Claims were voluntarily dismissed by Plaintiff without prejudice on May 18, 2026. [Doc. No. 11].

making the agreement *void ab initio* and barring the recovery of principal and interest by the Defendant. The Plaintiff further argues that the Agreement, as well as the Transfers, did not provide reasonably equivalent value to the Plaintiff. For those reasons, the Plaintiff seeks avoidance of the Agreement and the Transfers made pursuant to the same as constructively fraudulent transfers under 11 U.S.C. § 548(a)(1)(B), and recovery of the amount of the avoided transfers pursuant to 11 U.S.C. § 550(a).

The Defendant moves to dismiss the Complaint pursuant to Federal Rule of Civil Procedure 12(b)(6), contending that the Plaintiff fails to state a claim upon which relief can be granted. The Defendant argues that a prepetition default judgment entered in the Supreme Court of Kings County, New York, in favor of the Defendant in a prepetition breach of contract action[3] (the "Default Judgment") bars the Avoidance Claims under the doctrines of *res judicata* and Rooker-Feldman. In addition, the Defendant argues that the Plaintiff improperly seeks to assert usury as an affirmative cause of action under New York law. Finally, the Defendant asserts that the Complaint is barred by the doctrine of *in pari delicto* because the Debtor and its Principal, both sophisticated parties, voluntarily entered into the Agreement and were at least equally responsible for the alleged wrongdoing, having misrepresented the Debtor's financial condition when entering into the Agreement.

In its Response, Plaintiff argues that dismissal is improper because neither the Rooker-Feldman doctrine nor principles of claim or issue preclusion apply to this core bankruptcy proceeding. The Plaintiff argues that the Avoidance Claims under the Bankruptcy Code could not have been raised in the prior state court action because the Debtor-in-Possession did not exist at

---

[3] *See* Judgment, *G and G Funding Group, LLC v. Black Pearl Vision, LLC, et al.*, Index No. 519043/2024 (N.Y. Sup. Ct., Kings Cnty. Aug. 21, 2024), Doc. No. 10.

the time of that litigation and the Avoidance Claims did not arise until the bankruptcy case was filed. Accordingly, the Plaintiff contends that the Default Judgment does not bar the Adversary Proceeding.

The Plaintiff further asserts that the underlying "sale of future receipts" structure is not legally cognizable as characterized by the Defendant and, in substance, cannot operate as a true sale. Finally, the Plaintiff argues that the transaction independently fails to provide reasonably equivalent value under 11 U.S.C. § 548, supporting avoidance of the Transfers regardless of the state court judgment or contractual characterization in the Agreement.

At the Hearing, Defendant primarily argued that Plaintiff's claims are barred by *in pari delicto*, usury doctrine, and the Rooker-Feldman and preclusion doctrines. Defendant contended that (1) the Principal was a sophisticated borrower engaged in repeated merchant cash advance transactions, (2) that New York law does not permit usury law to be used affirmatively to invalidate obligations, and (3) that the Default Judgment, finding the transaction to be a sale supported by consideration, precludes relitigation of those issues in this Court. Defendant also maintained that the Debtor-in-Possession remains bound by the Debtor's prior conduct for preclusion purposes.

Plaintiff responded that none of these defenses apply in the bankruptcy context. Plaintiff argued that the Avoidance Claims arise only upon the filing of the bankruptcy case and could not have been litigated in the state court action, and therefore are not subject to claim or issue preclusion or Rooker-Feldman review. Plaintiff further asserted that *in pari delicto* is inapplicable to avoidance actions brought by a debtor-in-possession, and emphasized that the Complaint alleges

5

a substantial disparity between amounts advanced and repaid, supporting lack of reasonably equivalent value independent of any usury theory or prior state court judgment.

## II.   DISCUSSION

### a.   Motion to Dismiss Standard

To survive a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), a complaint must contain "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A claim "has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 556). The Court assumes the truth of the complaint's factual allegations but need not accept "legal conclusions" or "unwarranted inferences, unreasonable conclusions, or arguments." *In re Hickory Printing Grp., Inc*, 469 B.R. 623, 625 (Bankr. W.D.N.C. 2012) (quoting *Giarratano v. Johnson*, 521 F.3d 298, 302 (4th Cir. 2008)). The Court must also "draw all reasonable inferences in favor of the plaintiff." *E.I. du Pont de Nemours & Co. v. Kolon Indus., Inc.,* 637 F.3d 435, 440 (4th Cir. 2011).

### b.   The Rooker-Feldman Doctrine Does Not Deprive This Court of Jurisdiction

Defendant argues that the Complaint is barred by the Rooker-Feldman doctrine based the Default Judgment. The Court disagrees. The Rooker-Feldman Doctrine prohibits lower federal courts from "exercising appellate jurisdiction over final state-court judgments." *Lance v. Dennis*, 546 U.S. 459, 463 (2006) (per curiam); *see also Exxon Mobil Corp. v. Saudi Basic Indus. Corp.*, 544 U.S. 280, 284 (2005); *Davani v. Va. Dept. of Transp.*, 434 F.3d 712, 718-19 (4th Cir. 2006). It applies to "state-court losers complaining of injuries caused by state-court judgments rendered before the district court proceedings commenced and inviting district court review and rejection

of those judgments.'" *Adkins v. Rumsfeld*, 464 F.3d 456, 463 (4th Cir. 2006) (quoting *Exxon Mobil*, 544 U.S. at 284).

The Rooker-Feldman doctrine is not implicated here. Plaintiff does not seek review of, or relief from, the state court judgment for breach of contract and enforcement of a personal guaranty, nor does it ask this Court to determine whether the Default Judgment was correctly entered. Instead, Plaintiff asserts the independent Avoidance Claims under 11 U.S.C. § 548(a)(1)(B) based on the alleged constructively fraudulent nature of the underlying Transfers. Any ruling in Plaintiff's favor would not constitute appellate review of the Default Judgment but would, at most, possibly contradict it, which is insufficient to trigger Rooker-Feldman. *See Anderson v. Cordell* (*In re Infinity Bus. Grp., Inc.*), 497 B.R. 495, 502–04 (Bankr. D.S.C. 2013).

Moreover, the Avoidance Claims did not belong to the Debtor at the time of the state court proceedings and do not require this Court to review or reject the validity of the Default Judgment. Courts have consistently held that Rooker-Feldman does not bar avoidance actions in these circumstances. *Greenwich Retail Grp. LLC v. Moby Cap., LLC (In re Greenwich Retail Grp. LLC)*, 677 B.R. 473, 491-92 (Bankr. S.D.N.Y. 2026); *Anderson v. Cordell*, 497 B.R. at 502–04; *Preston v. Nationstar Mortg. LLC* (*In re Preston*), 2025 Bankr. LEXIS 954, at *10-11 (Bankr. D. Conn. Apr. 16, 2025); *Pryor v. Town of Smithtown* (*In re Jadeco Constr. Corp.*), 606 B.R. 169, 184-5 (Bankr. E.D.N.Y. 2019). Accordingly, the Rooker-Feldman doctrine does not preclude consideration of Plaintiff's Avoidance Claims.

### c. The Default Judgment Does Not Bar Plaintiff's Avoidance Claims Under Principles of Preclusion

The Defendant also moves the Court to dismiss the Avoidance Claims by claiming that they are barred by the doctrines of *res judicata* and collateral estoppel. The doctrine of *res judicata*,

7

or claim preclusion, provides that "a final judgment on the merits of an action precludes the parties or their privies from relitigating issues that were or could have been raised in that action.'" *Providence Hall Assocs. Ltd. P'ship v. Wells Fargo Bank, N.A.*, 816 F.3d 273, 276 (4th Cir. 2016) (quoting *Pueschel v. U.S.*, 369 F.3d 345, 354 (4th Cir. 2004)). For the doctrine of *res judicata* to be applicable, there must be three elements: (1) a final judgment on the merits in the prior suit; (2) the same transaction or occurrence in both the earlier suit and the present suit; and (3) the same parties or their privies between the two suits. *Pueschel*, 369 F.3d at 354-55; *Providence Hall*, 816 F.3d at 276. To consider the Default Judgment's preclusive effect, a  court applies the preclusion law of the state in which the prior judgment was rendered. *Bennett v. Garner*, 913 F.3d 436, 439-40 (4th Cir. 2019); *In re Genesys Data Techs., Inc.,* 204 F.3d 124, 128 (4th Cir. 2000).

As a threshold matter, the Plaintiff argues that *res judicata's* "same parties" element is not met because the Debtor-in-Possession and the Debtor are two separate entities. The Plaintiff cites to 11 U.S.C. § 1182, which provides distinct definitions for Debtor and Debtor-in-Possession. The Plaintiff argues that since the Debtor-in-Possession only existed after the Debtor filed the bankruptcy case, the Debtor-in-Possession was not a party to the Default Judgment and thus,  *res judicata* does not apply as it requires the same parties across both cases. The Plaintiff's analysis ignores the "or their privies" language from the *res judicata* test and instead argues that the Parties must be identical. It is well established law that the "or their privies" language captures representatives of the debtor's bankruptcy estate, including a Debtor-in-Possession. *Providence Hall*, 816 F.3d at 282 (noting that a trustee's privity with a debtor satisfies *res judicata*'s  "or their privies" prong). Since the Debtor-in-Possession is a representative of the Debtor's bankruptcy

estate, the Debtor-in-Possession shares privity with the Debtor and therefore can be subject to *res judicata* stemming from an action involving the prepetition Debtor. *Id.*

However, *res judicata* is inapplicable to the Avoidance Claims because those claims arise under the Bankruptcy Code and fall within the bankruptcy court's exclusive jurisdiction; accordingly, the Default Judgment could not have resolved or barred those claims. Bankruptcy courts exercise exclusive jurisdiction over bankruptcy matters because, as the Supreme Court has explained, "bankruptcy law is federal law." *Brown v. Felsen*, 442 U.S. 127, 136 (1979) (quoting U.S. Const., Art. I, § 8, cl. 4). Consequently, state court judgments are not given preclusive effects for claims that exclusively arise under bankruptcy law, like dischargeability. *Id.* at 138; *see Archer v. Warner*, 538 U.S. 314, 320 (2003). A contrary rule would force litigants to raise bankruptcy law claims or defenses in an earlier state-action, even if the bankruptcy law claims or defenses are not at issue. *Archer*, 538 U.S. at 321 (quoting *Brown*, 442 U.S. at 134) ("Congress also intended to allow the relevant determination (whether a debt arises out of fraud) to take place in bankruptcy court, not to force it to occur earlier in state court at a time when nondischargeability concerns 'are not directly in issue and neither party has a full incentive to litigate them.'"). Giving state court judgments preclusive effect towards claims that exclusively exist in bankruptcy proceedings would (1) force parties to be essentially clairvoyant and anticipate future bankruptcy proceedings; (2) force parties to plead every theoretical form of relief in the earlier state action — regardless of whether the claim is at issue or not; and (3) undermine the congressional intent to vest jurisdiction within the bankruptcy courts, and not within state courts. *See Spilman v. Harvey*, 656 F.2d 224, 226 (6th Cir. 1981). Such result would be inconsistent with the structure and purpose of the Code.

The *Brown*, *Archer*, and *Spilman* opinions all relate to the issue of dischargeability, which is governed exclusively and explicitly by federal bankruptcy law, and in which Congress has not

given the states a key role. *See McGarry v. Chew (In re Chew)*, 496 F.3d 11, 18 (1st Cir. 2007); *Spilman*, 656 F.2d at 226; *Brown*, 442 U.S. at 133-39; *Archer*, 538 U.S. at 319-22. Similarly, a § 548 claim exists solely within the Bankruptcy Code — not within state law. *Greenwich Retail Grp.*, 677 B.R. at 491-92.

Here, the Defendant argues that the Default Judgment precludes the Avoidance Claims because the elements of *res judicata* are satisfied. The Court disagrees. As the *Brown*, *Archer*, and *Spilman* courts recognize, state court judgments are not given preclusive effect as to causes of action that arise exclusively under the Bankruptcy Code and that Congress entrusted the adjudication to the bankruptcy courts. Accordingly, the Default Judgment does not bar the Plaintiff from pursuing avoidance relief under § 548, and this Court must independently examine the Transfers under the statute notwithstanding the outcome of the earlier state court proceeding.

The Defendant's *res judicata* argument fails for a second, more fundamental reason. New York law adopts the broad transactional view of *res judicata's* "same transaction or occurrence" prong, barring any claim that was either litigated, or could have been litigated, in the prior action. *See Greenwich Retail Grp.*, 677 B.R. at 491-93. New York bankruptcy courts have established that § 548 fraudulent transfer claims could not have been litigated in a previous state-action if the bankruptcy filing occurs after the state court judgment. *Id.* As the *Greenwich* court stated:

> A fraudulent transfer claim under Section 548 exists only after a bankruptcy petition has been filed. The Debtors therefore did not own the Section 548 claims, and could not have asserted them, at the time of the Itria transaction or at time the state court judgment was entered in favor of Itria. The Section 548 claim therefore is not one that was actually litigated, or that could have been litigated, at the time the state court proceeding was filed or at the time the state court judgment was entered. The state court judgment cannot reasonably be treated as *res judicata* with respect to claims that did not yet even exist when the judgment was entered.

*Id.* at 491-92; *see also Preston,* 2025 Bankr. LEXIS 954 at *16 (Bankr. D. Conn. Apr. 16, 2025); *C&M Invs., L.L.C. v. Jones (In re Jones)*, 209 B.R. 380, 384 (Bankr. E.D. Va. Apr. 11, 1997). The

10

*Preston* court similarly concluded that collateral estoppel did not bar a debtor's claims where the debtor lacked an adequate opportunity to litgate those issues, including federal bankruptcy claims, in state court. *Preston*, 2025 Bankr. LEXIS 954 at *17. As the court explained in *Jones*, "[i]t cannot be argued here that debtor could or should have raised § 548, a bankruptcy remedy, as a defense in that case. Since § 548 was not available, it cannot here be a basis to assert res judicata." *In re Jones*, 209 B.R. at *384.[4]

In this case, because the Default Judgment preceded the Petition Date, the Debtor could not have raised the Avoidance Claims in state court. Accordingly, consistent with New York preclusion law, the Court concludes that *res judicata* does not apply to claims that were never litaged nor capable of being litigated in the prior state court action.

The Defendant nevertheless argues that the Court is bound by certain factual determinations allegedly established in the Default Judgment, including the nature of the contract and the existence of fair consideration. Defendant's contention implicates issue preclusion rather than claim preclusion. The Defendant claims that the Court is bound in this action by assertions in the state court complaint regarding the nature of the contract and the existence of fair consideration.

---

[4] The Court considers whether a claim based on a state fraudulent transfer law, modeled after the 11 U.S.C. § 548 fraudulent transfer, would result in *res judicata* applying. This argument is based on the premise that if a state fraudulent transfer law exists that is analytically identical to the 11 U.S.C. § 548 fraudulent transfer claim, this claim "could have been litigated" — albeit in a slightly different form. The Court finds this argument unconvincing. Although a state fraudulent transfer statute may be identical in effect and in analysis to a fradulent transfer claim under § 548, the claims are nevertheless distinct causes of action because one arises under state law and the other under federal bankruptcy law. The Court's determination is supported by the court's decision in *Preston* which faced a similar predicament. The plaintiff filed a fraudulent transfer claim pursuant to Connecticut General Statutes § 52-552(e) and a fraudulent transfer pursuant to 11 U.S.C. § 548(a)(1)(B). *Preston*, 2025 Bankr. LEXIS 954 at *16-17. The court did not view the existence of a state fraudulent transfer law as precluding fraudulent transfer claims pursuant to 11 U.S.C. § 548. *Id.* This Court also does not rule that the Plaintiffs failing to raise a state fraudulent transfer claim in a previous state action precludes it from raising a federal fraudulent transfer claim pursuant to 11 U.S.C. § 548.

11

*See* Complaint, *G and G Funding Group, LLC v. Black Pearl Vision, LLC, et al.*, Index No. 519043/2024 (N.Y. Sup. Ct., Kings Cnty. filed July 15, 2024), Doc. No. 1 (the "State Court Complaint").[5] Under federal law, collateral estoppel applies only when an issue is actually litigated and determined in previous action, precluding default judgments. *In re Qiao Lin*, 576 B.R. 32, 55 (Bankr. E.D.N.Y. 2017). However, New York adopts a different approach in which default judgments can have a preclusive effect "when the issue was 'raised by the pleadings or otherwise placed in issue.'" *See id.* at 48 (quoting *Dolan v. Roth*, 325 F. Supp. 2d 122, 133 (N.D.N.Y. 2004), *rev'd in part on other grounds*, 170 F. App'x 723 (2d Cir. 2006)); *see also In re Liu*, 658 B.R. 231, 239 (Bankr. E.D.N.Y. 2024) (citing *Evans v. Ottimo*,[6] 469 F.3d 278, 281 (2d Cir. 2006)) ("New York law does not automatically exclude a default judgment from the application of collateral estoppel"). For collateral estoppel to apply to default judgments under New York law, the "identical" issue must have been "raised and necessarily decided in the prior action," and must be "decisive" in the current action. *In re Qiao Lin*, 576 B.R. at 49.

Default judgments are conclusive for collateral estoppel only with respect to facts that were required to be alleged as a basis for the proceeding underlying the default judgment. *See Gallery at Fulton Street, LLC v. Wendnew LLC*, 30 A.D.3d 221, 817 N.Y.S.2d 237 (1st Dep't 2006); *see*

---

[5] Defendant cites to *Mey v. Phillips*, 71 F.4th 203, 223 (4th Cir. 2023) to support its claim that by failing to appear or contest these statements in the state court action, the Plaintiff has admitted them. However, on preclusion issues, New York state law necessarily controls. *Bennett v. Garner*, 913 F.3d 436, 439-40 (4th Cir. 2019); *In re Genesys Data Techs., Inc.*, 204 F.3d 124, 128 (4th Cir. 2000). Further, *Mey* concerns the preclusive effect of a default judgment on a defendant's entitlement to a hearing on damages within the same action, it does not address the preclusive effect of a state court default judgment in a subsequent bankruptcy proceeding.

[6] There is considerable disagreement over whether the Second Circuit accurately applied New York issue preclusion law related to default judgments in *Evans v. Ottimo*. *See In re Soliman*, 515 B.R. 179, 185 (Bankr. S.D.N.Y. 2014). In *Soliman*, the court described *Evans'* conclusion as "questionable" and pointed to earlier decisions suggesting that collateral estoppel does not apply to default judgments. *Id.* However, even the *Soliman* court acknowledged that *Evans* remains binding case law in New York and faithfully applied it. *See id.* at 186.

12

*also Lautman v. 2800 Coyle St. Owners Corp.*, No. 14-CV-1868 ARR VVP, 2014 WL 4843947, at *13 (E.D.N.Y. Sept. 26, 2014). Through a default judgment, the court "is necessarily making findings on the basic elements" of the claim. *In re Smallwood*, No. 20-42708-NHL, 2021 WL 4465560, at *12 (Bankr. E.D.N.Y. Sept. 28, 2021) (citing *McGee v. Dunn*, 906 N.Y.S.2d 74, 75–76 (N.Y. App. Div. 2d Dep't 2010)). Even though New York departs from other jurisdictions in regards to collateral estoppel and default judgments, it still "assures that a party will not be precluded from addressing issues that were not necessary to the first court's determination." *See In re Qiao Lin*, 576 B.R. at 49-50.

Therefore, bankruptcy courts must determine what was "necessarily determined" by the preceding state court default judgment when considering the preclusive effective of the same. *See In re Liu*, 658 B.R. at 240. In *Smallwood*, despite factual allegations in the complaint that the debtor acted "wantonly, intentionally, and maliciously," the debtor was not collaterally estopped from contesting whether he had fraudulent intent under § 523(a)(4) since a finding of fraudulent intent was not necessary to the state court's default judgment related to conversion. *See In re Smallwood*, No. 20-42708-NHL, 2021 WL 4465560, at *8; *see also In re Qiao Lin*, 576 B.R. at 60 (finding that a debtor was only collaterally estopped from contesting willfulness, a necessary determination of the default judgment, but not from contesting maliciousness which was not a necessary determination of the same).

Furthermore, the necessary elements of the claim must be "virtually identical" to the bankruptcy claim for collateral estoppel to apply. *See In re Norton*, No. 8-17-70855-AST, 2020 WL 717411, at *4 (Bankr. E.D.N.Y. Jan. 15, 2020) (finding elements of common law fraud and § 523(a)(2) to be essentially the same); *see also In re Ferrandina*, 533 B.R. 11, 30 (Bankr. E.D.N.Y. 2015) (determining prior sexual harassment liability was sufficiently identical to a finding of

13

willful or malicious injury under § 523(a)(6)). In the Motion to Dismiss, the Defendant seeks to preclude consideration of two issues raised in the New York complaint, (1) the nature of the contract as either a sale or loan, and (2) the existence of fair consideration. (Ex. B ¶ 5.) However, neither of these issues were necessarily decided in the Default Judgment.

The Default Judgment did not include a conclusive finding as to whether the Agreement is a sale or a loan. Rather, the Default Judgment was entered on claims for breach of contract and enforcement of the Principal's personal guaranty. Under New York law, a breach of contract claim requires: "(1) the existence of an agreement, (2) adequate performance of the contract by the plaintiff, (3) breach of contract by the defendant, and (4) damages." *Gan v. GSUIG Real Est. Member LLC*, 797 F. Supp. 3d 69, 101 (E.D.N.Y. 2025), *aff'd*, No. 25-2313-CV, 2026 WL 1145891 (2d Cir. Apr. 28, 2026) (citations omitted). Although a party needs to allege the provisions of the contract that were breached, no deeper inquiry is made into the nature of the contract. *See id*; *see also Mandarin Trading Ltd. v. Wildenstein*, 16 N.Y.3d 173, 181–82, 944 N.E.2d 1104, 1110 (2011).

The statement in the State Court Complaint that the "[p]laintiff agreed to purchase all rights of Company Defendant's future receivables", Ex. B ¶ 5, does not have preclusive effect since the default judgment only "necessarily determined" the four elements of a breach of contract claim discussed above. *See In re Liu*, 658 B.R. at 240. Any additional statements on the nature of the contract do not have preclusive effect. *See In re Smallwood*, No. 20-42708-NHL, 2021 WL 4465560, at *12 (citations omitted).

Similarly, the Default Judgment only decided the mere existence of consideration. In New York, the existence of a contract requires showing "an offer, acceptance of the offer, consideration, mutual assent, and an intent to be bound." *Kassirer v. Gotlib*, 248 A.D.3d 472, 472, 254 N.Y.S.3d

66, 68 (2026) (quoting *Kowalchuk v. Stroup,* 61 A.D.3d 118, 121, 873 N.Y.S.2d 43 (1st Dep't 2009)). Therefore, a default judgment for breach of contract only "necessarily determine[s]" only that consideration exists, not that there was fair consideration. *See In re Liu*, 658 B.R. at 240. The State Court Complaint's statement that it "gave fair consideration to the company defendant which was tendered for the right to receive the aforementioned receivables," Ex. B ¶ 15, does not have preclusive effect. *See In re Liu*, 658 B.R. at 240. The Default Judgment is conclusive only to the existence of consideration and makes no further conclusions regarding the adequacy of the consideration. *See id.*

Accordingly, collateral estoppel does not bar the Plaintiff from litigating the nature of the Parties' transaction or whether the Transfers were supported by reasonably equivalent value. Although the Default Judgment conclusively established the elements necessary to sustain the state court breach of contract claim, it did not necessarily determine whether the transaction constituted a true sale or a disguised loan, nor did it determine whether the consideration exchanged was fair or reasonably equivalent for purposes of a fraudulent transfer analysis. Because those issues were neither identical to the issues presented in this Adversary Proceeding nor necessary to the entry of the Default Judgment, the Defendant cannot invoke collateral estoppel to foreclose their litigation here. The Court therefore declines to give preclusive effect to the State Court Complaint's allegations regarding the character of the transaction and the adequacy of consideration and will independently evaluate those issues in connection with the Avoidance Claims.

### d.   The Doctrine of *In Pari Delicto* Does Not Warrant Dismissal

The Defendant may not utilize the doctrine of *in pari delicto* as an affirmative defense to the claims made in the Complaint because *in pari delicto* is not an applicable defense to a 11 U.S.C. § 548(a)(1)(B) claim and, in the alternative, the Defendant has not plead sufficient facts to allege

15

the Parties were participants in the "same wrongdoing." *Grayson Consulting, Inc. v. Wachovia Sec., LLC* (*In re Derivium Cap. LLC*), 716 F.3d 355, 367 (4th Cir. 2013). The doctrine of *in pari delicto* "precludes a plaintiff who participated in the same wrongdoing as the defendant from recovering damages from that wrongdoing." *Id.* The defense "bars a wrong-doer from recovering against his alleged coconspirators." *Bogdan v. JKV Real Estate Services* (*In re Bogdan*), 414 F.3d 507, 514 (4th Cir. 2005). Thus, a plaintiff "cannot recover damages if it bears equal or greater fault in the alleged tortious conduct as the alleged tortfeasor." *Grayson Consulting, Inc.*, 716 F.3d at 367.

The Defendant's *in pari delicto* defense fails as a matter of law because a constructive fraudulent transfer claim under § 548(a)(1)(B) is a specific bankruptcy action that is not available to a debtor until a bankruptcy petition has been filed. *See Wagner v. Wilson* (*In re Vaughan Co., Realtors*), No. 12-01142 J, 2013 WL 960143, at *6 (Bankr. D.N.M. Mar. 11, 2013) ("Sections 544(b), 547, and 548 confer avoidance powers onto the trustee that do not exist independently of or arise prior to the commencement of a bankruptcy case. As a result, such claims could not have been asserted by the pre-petition debtor."). Section 548(a) permits a trustee (or debtor-in-possession) to "avoid any transfer" involving actual or constructive fraud "for the benefit of the estate." 11 U.S.C. §§ 1107(a), 548(a)(1), 550(a).

While the Fourth Circuit has found the doctrine of *in pari delicto* applicable under 11 U.S.C. § 541, it has yet to consider whether "pursuing an avoidance action under Sections 547, 548, or 550 would be subject to an affirmative defense such as *in pari delicto*." *Anderson v. Morgan Keegan & Co.* (*In re Infinity Bus. Grp., Inc.*), 31 F.4th 294, 302 (4th Cir. 2022); *see Grayson Consulting, Inc.*, 716 F.3d at 367 (finding *in pari delicto* applicable under a § 541 analysis because "*in pari delicto* would have barred a debtor from bringing suit directly" and "it similarly

16

bars a bankruptcy trustee—standing in the debtor's shoes—from bringing suit"). Other courts have held that a defendant may not assert *in pari delicto* as a defense to § 548 claims. *See McNamara v. PFS* (*In re Pers. & Bus. Ins. Agency*), 334 F.3d 239, 246-47 (3d Cir. 2003) (holding that *in pari delicto* does not apply to a trustee "acting under § 548 rather than § 541" because the trustee had "clean hands"); *see also Podell & Podell v. Feldman* (*In re Leasing Consultants*), 592 F.2d 103, 110-111 (2d Cir. 1979) (denying an *in pari delicto* defense in a pre-Bankruptcy Code case and allowing the trustee to "sue on behalf of the creditors" because the creditors were "not alleged to have been involved in the illegal payment in any way").

*In pari delicto* is inapplicable with respect to a § 548 claim because the debtor-in-possession "does not stand in the shoes of the pre-petition debtor". *Wagner*, 2013 WL 960143, at *6; *see Marshack v. JGW Solutions, LLC* (*In re Litig. Practice Grp. P.C.*), No. 8:23-ap-01148-SC, 2024 Bankr. LEXIS 3145, at *51-52 (Bankr. C.D. Cal. Mar. 27, 2025) ("Trustee is not standing in the shoes of Debtor but rather the unsecured creditors, making the *in pari delicto* defense inapplicable."). A § 548 claim "could not have been asserted by the pre-petition debtor" because § 548 "avoidance powers … do not exist independently of or arise prior to the commencement of a bankruptcy case." *Wagner*, 2013 WL 960143, at *6. Therefore, the debtor-in-possession is not "subject to the same defenses as could have been asserted' against the debtor." *Cf. Grayson Consulting, Inc.*, 716 F.3d at 367 (quoting *Official Comm. of Unsecured Creditors v. R.F. Lafferty & Co., Inc.*, 267 F.3d 340, 358 (3d Cir. 2001)). Ultimately, the Defendant is not able to assert an *in pari delicto* defense against a constructive fraudulent transfer claim in a bankruptcy adversary proceeding as a matter of law.

Even if the Defendant was not prevented from raising an *in pari delicto* defense as a matter of law, the Defendant has still failed to plead sufficient facts to state a plausible claim for the

17

purpose of Rule 12(b)(6).  The Fourth Circuit has held that the doctrine of *in pari delicto* "has no application in [an] adversary proceeding" where a Chapter 7 trustee pursued litigation against the creditors of a debtor's fraudulent scheme "[b]ecause there is no allegation that the mortgage lenders were involved in any wrongdoing relating to the" debtor's fraudulent scheme. *Bogdan*, 414 F.3d at 514. Therefore, "the alleged coconspirators cannot assert the defense of *in pari delicto* against the trustee, as assignee of the mortgage lenders," because the mortgage lenders were not "involved in" the debtor's fraudulent scheme. *Id.*

Similarly, the Defendant has not alleged all of the required elements of an *in pari delicto* defense specifically because the Defendant has not alleged that the Parties worked together in the common pursuit of the "same wrongdoing." *Grayson Consulting, Inc.*, 716 F.3d at 367. In the Motion to Dismiss, the Defendant alleged that the Plaintiff made "demonstrably false" statements about the encumbered status of its future receipts before signing the Agreement. Def.'s Mot. to Dismiss ¶ 27. The Defendant also alleged the Plaintiff falsely represented that it was "not insolvent" when the Agreement was executed. *Id.* Even assuming both of those allegations are true, the Defendant has failed to allege the Parties were participants in the "same wrongdoing." *Grayson Consulting, Inc.*, 716 F.3d at 367. The Plaintiff could not have participated in or orchestrated a fraud against itself. The Parties were never "coconspirators" pursuing the "same wrongdoing[,]" as the *in pari delicto* defense requires. *Bogdan*, 414 F.3d at 514; *Grayson Consulting, Inc.*, 716 F.3d at 367. The Defendant's allegations of fraud in the Motion to Dismiss are distinct and in opposition to the underlying usury allegations made in the Plaintiff's Complaint. Def.'s Mot. to Dismiss ¶ 27; Complaint ¶¶ 33-39. It is impossible for the Plaintiff to "bear[] equal or greater fault in the alleged" usury. *Grayson Consulting, Inc.*, 716 F.3d at 367. Like the mortgage lenders in *Bogdan*, there are no allegations in the Complaint or Motion to Dismiss that indicate

18

that the Plaintiff was coordinating or cooperating with the Defendant in any alleged "wrongdoing" related to the potential usurious nature of the Agreement.[7] *Bogdan*, 414 F.3d at 509-14.

Initially, the Plaintiff's Complaint included RICO Claims, and the Defendant responded with the affirmative *in pari delicto* defense in its Motion to Dismiss. Mot. To Dismiss ¶¶ 18-29; *see Smithfield Foods Inc. v. United Food & Com. Workers Int'l Union*, 254 F.R.D. 274, 280 (E.D. Va. 2008) ([T]he defense of in pari delecto is available as a defense to a RICO charge."). The Plaintiff later voluntarily dismissed the RICO Claims on May 18, 2026. [Doc. No. 11]. It appears likely that the *in pari delicto* defense was targeted primarily at the later withdrawn RICO Claims. Irrespective of the procedural history in this case, *in pari delicto* is not an applicable defense to a 11 U.S.C. § 548(a)(1)(B) claim and the Defendant has not plead sufficient facts to allege the Parties were participants in the "same wrongdoing." *Grayson Consulting, Inc.*, 716 F.3d at 367.

e.   **The Complaint Plausibly States a Claim for Constructive Fradulent Transfer Under § 548(a)(1)(B)**

A constructively fraudulent transfer under 11 U.S.C. § 548(a)(1)(B) is defined as a transfer where "(1) the debtor was insolvent,[8] and (2) the debtor received 'less than a reasonably equivalent

---

[7] The Debtor's actions contrast with *Grayson* and *Anderson* where both parties in the adversary proceeding allegedly benefited from the same underlying fraudulent scheme. *Contra Grayson Consulting, Inc.*, 716 F.3d at 367 ("[T]o the extent that in pari delicto would have barred a debtor from bringing suit directly, it similarly bars a bankruptcy trustee—standing in the debtor's shoes—from bringing suit."); *Anderson*, 31 F.4th at 302-03 ("We hold only that when a trustee pursues a right of action that ultimately derives from the debtor—even if the trustee is nominally exercising a creditor's powers when doing so—the trustee remains subject to the same defenses as the debtor").

[8] In the alternative to insolvency, § 548 permits a debtor to plead that the debtor "(II) was engaged in business or a transaction, or was about to engage in business or a transaction, for which any property remaining with the debtor was an unreasonably small capital; (III) intended to incur, or believed that the debtor would incur, debts that would be beyond the debtor's ability to pay as such debts matured; or (IV) made such transfer to or for the benefit of an insider, or incurred such obligation to or for the benefit of an

19

value in exchange.'" *French v. Liebmann* (*In re French*), 440 F.3d 145, 150 (4th Cir. 2006) (quoting 11 U.S.C. § 548(a)(1)(B)). The trustee or debtor-in-possession may avoid a constructively fraudulent transfer "that was made or incurred on or within 2 years before the date of the filing of the petition." 11 U.S.C. § 548(a)(1).

The Complaint alleges that at the time the Plaintiff made the Transfers, the Debtor was insolvent, or became insolvent as a result of the Transfers. Further, the Parties entered into the Agreement on December 28, 2023, and all Transfers were made between January 2, 2024 and July 12, 2024, dates which fall within two (2) years of the Petition Date. Accordingly, a primary issue is whether the Debtor received less than a reasonably equivalent value in exchange for the Transfers.

As explained in *Martinez Quality*, "the analysis for reasonably equivalent value requires considering the net benefit to the debtor and not simply the amount the debtor transferred to a certain party." *Martinez Quality Painting & Drywall, Inc. v. Newco Cap. Grp. VI, LLC* (*In re Martinez Quality Painting & Drywall, Inc.*), No. 22-30357, 2025 WL 828882, at *7-8 (Bankr. W.D.N.C. Mar. 14, 2025) (citation omitted). "[T]his Court has set forth a two-part test to assess reasonably equivalent value under section 548: '(1) Did the debtor receive value, and (2) was the payment reasonably equivalent to the value extended?'" *Id*. at *9 (citation omitted). "In analyzing fraudulent conveyances, … the test is whether, as a result of the transaction[s], the debtor's estate was unfairly diminished." *Id.* (citation omitted).

Defendant argues that the Agreement constituted a true sale of future receivables and therefore provided reasonably equivalent value as a matter of law. Plaintiff disputes that characterization and contends that the Agreement was, in substance, a loan. The Court need not

---

insider, under an employment contract and not in the ordinary course of business. § 548(a)(1)(B)(i). The Plaintiff has also pled elements (II) and (III) here.

resolve that dispute at this stage. As this Court has previously recognized, distinguishing between a loan and a sale in the merchant cash advance context presents a fact intensive inquiry that is often not appropriate for resolution on a motion to dismiss. *See Black Pearl Vision, LLC v. Pearl Delta Funding, LLC*, No. 25-03111, 2025 Bankr. LEXIS 3356, at *6-8 (Bankr. W.D.N.C. Dec. 31, 2025). Whether a transaction constitutes a loan for purposes of New York usury law depends upon the economic realities of the arrangement and requires consideration of numerous factors beyond the face of the agreement. *Id.*

The Court need not resolve that issue at this stage. Unlike a usury claim, Plaintiff's Avoidance Claims do not necessarily rise or fall on the ultimate characterization of the Agreement. The question presently before the Court is whether the Complaint plausibly alleges that the Agreement and Transfers were made for less than reasonably equivalent value. Accordingly, the Court declines at this stage to determine whether the Agreement is properly characterized as a loan or a sale and instead confines its analysis to whether Plaintiff has plausibly stated a claim under § 548(a)(1)(B).

Taking the allegations in the Complaint as true, the Plaintiff received $191,829.68 under the Agreement and paid $233,574.06 to the Defendant over approximately six months. While this disparity alone may not establish a lack of reasonably equivalent value after consideration of market factors, it is sufficient, when considered together with the other allegations in the Complaint and viewed in the light most favorable to the Plaintiff, to support a plausible claim under § 548(a)(1)(B).

### f.   Plaintiff Cannot Affirmatively Rely on New York Usury Law to State a Claim

Defendant further argues that Plaintiff improperly seeks to invoke New York usury law as an affirmative basis for relief. The Court agrees that, under New York law, a corporate borrower

generally may assert criminal usury only as a defense and not as an affirmative cause of action. *Black Pearl Vision,* 2025 Bankr. LEXIS 3356, at *6-8; *Martinez Quality*, 2025 WL 828882, at *7-8; *Zoo Holdings, LLC v. Clinton*, 814 N.Y.S.2d 893, 893 (N.Y. Sup. Ct. 2006). Moreover, in the bankruptcy context, courts have recognized that where a defendant has not filed a proof of claim or otherwise taken affirmative action within the bankruptcy case to collect an alleged debt, there is generally no basis for a debtor or debtor-in-possession to invoke New York usury law offensively. *See Martinez Quality*, 2025 WL 828882, at *7-8; *Anderson v. Secure Cap.*, LLC (*In re Chadley Mgmt.),* No. 24-06029, slip op. at 3-4 (Bankr. M.D.N.C. June 9, 2025); *Azalea Gynecology, P.A. v. GFE NY, LLC* (*In re Azalea Gynecology*), No. 24-00109-5, slip op. at 7-8 (Bankr. E.D.N.C. Dec. 6, 2024). The Defendant has not filed a proof of claim or otherwise sought to collect a debt through the Debtor's bankruptcy case. Accordingly, to the extent the Complaint seeks affirmative relief based solely upon alleged violations of New York usury law, such a theory is not cognizable.

The Court does not, however, construe the Complaint's reliance on New York usury law as dispositive to the viability of the Avoidance Claims at this stage of the proceedings. Rather, Plaintiff relies on allegations concerning the nature of the transaction and the disparity between the amounts advanced and repaid in support of its contention that the Transfers made pursuant to the Agreement were for less than reasonably equivalent value under § 548(a)(1)(B). To the extent the Complaint seeks affirmative relief based upon alleged violations of New York usury law or seeks to void the Agreement pursuant to New York usury statutes, those theories are not cognizable

22

and are dismissed. The Court will nevertheless consider the remaining factual allegations in determining whether Plaintiff has plausibly stated a claim for relief under § 548(a)(1)(B).

### III.    CONCLUSION

Based on the foregoing, the Court **ORDERS** as follows:

1.  The Motion is **GRANTED** as it relates to any claims brought by the Plaintiff that are premised on an affirmative use of New York usury law.

2.  The Motion is **DENIED** as to all other bases of the Avoidance Claims.

**IT IS SO ORDERED.**

**This Order has been signed electronically.**                      **United States Bankruptcy Court**
**The Judge's signature and Court's seal**
**appear at the top of this order.**

23